UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – — – – – – – – – – – X

PATRICK SAGET, *et al.*,

                             Plaintiffs,           Docket No. CV-18-1599

    - against -                         (Kuntz, J.)
                                           (Tiscione, M.J.)
DONALD TRUMP, *et al.*,

                           Defendants.
– – – – – – – – – – – – – – – – – – – – — – – – – – – – – – X


**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S
MOTION TO QUASH THE SUBPOENA FOR THE DEPOSITION OF FORMER ACTING
SECRETARY OF HOMELAND SECURITY ELAINE C. DUKE OR, IN THE
ALTERNATIVE, FOR A PROTECTIVE ORDER**



                                         RICHARD P. DONOGHUE
                                         United States Attorney
                                         Eastern District of New York
                                         271 Cadman Plaza East
                                         Brooklyn, New York 11201



December 17, 2018

JOSEPH A. MARUTOLLO
JAMES R. CHO
Assistant U.S. Attorneys
      (Of Counsel)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................iii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND............................................................................................................. 2

    A. The Duke Determination. ........................................................................... 2

    B. Plaintiffs' Subpoena for the Deposition of Former Acting Secretary Duke.................. 3

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT ................................................................................................................. 5

    A.    Plaintiffs Cannot Establish the Exceptional Circumstances Necessary to Justify ...
           Former Acting Secretary Duke's Deposition ......................................................... 6

    B.    Nearly All Testimony by Former Acting Secretary Duke Would Be Privileged.. 15

    C.    In the Alternative, A Stay of Former Acting Secretary Duke's Deposition is .........
           Warranted Pending the Outcome of the Supreme Court's Decision in *In Re* ..........
           *Department of Commerce* ................................................................................... 16

CONCLUSION ............................................................................................................. 17

## **TABLE OF AUTHORITIES**

### **Federal Cases**

*Arnold Agency v. West Virginia Lottery Com'n,* 206 W.Va. 583, 526 S.E.2d 814 (W. Va. 1999) ..... 9

*Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-00457-JST, 2014 WL 12644295
 (N.D. Cal. Nov. 19, 2014) ........................................................................................................ 6

*Bogan v. City of Boston*, 489 F.3d 417 (1st Cir. 2007) ................................................................. 11

*Camp v. Pitts*, 411 U.S. 138 (1973) ............................................................................................... 6

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402 (1971) ....................................... 12

*Constitution Pipeline Company, LLC v. N.Y. State Dep't of Envtl. Conservation*,
868 F.3d 87  (2d Cir. 2017) .......................................................................................................... 8

*Dobson v. Vail,* 2011 WL 4404146 (W.D. Wash. Sept. 21, 2011) ................................................. 9

*Fish v. Kobach,* 320 F.R.D. 566 (D. Kan. 2017) ......................................................................... 17

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ........................................................ 6

*Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209 (4th Cir. 1991) ......................................................... 7

*Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) ....................................................... 9

*Hermitage Glob. Partners LP v. Prevezon Holdings Ltd.,* No. 13-CV-6326, 2015 WL 728463
 (S.D.N.Y. Feb. 19, 2015) .......................................................................................................... 5

*Hongsermeier v. C.I.R.*, 621 F.3d 890 (9th Cir. 2010) ................................................................. 16

*In re Cheney,* 544 F.3d 311 (D.C. Cir. 2008) ................................................................................ 8

*In re Dep't of Commerce, No. 18-557*, 2018 WL 5458822 (Nov. 16, 2018) ................................ 2, 6

*In re United States Dep't of Commerce,* No. 18-2856, 18-2857, 2018 WL 6006885 (2d Cir. Oct. 9,
 2018 ......................................................................................................................................... 14

*In re United States,* 624 F.3d 1368 (11th Cir. 2010) ..................................................................... 6

*In re FDIC,* 58 F.3d 1055 (5th Cir. 1995) ..................................................................................... 8

*In re United States (Kessler),* 985 F.2d 510 (11th Cir. 1993) ....................................................... 6

*In re United States (Jackson),* 624 F.3d 1368 (11th Cir. 2010) ................................................. 8, 10

*In re United States (Reno & Holder)*, 197 F.3d 310 (8th Cir. 1999) ..........................................*passim*

*Lederman v. New York City Dep't of Parks and Rec.,* 731 F.3d 199 (2d Cir. 2013) ...............*passim*

*Marisol A. v. Giuliani,* No. 95 CIV. 10533 (RJW), 1998 WL 132810 (S.D.N.Y. Mar. 23, 1998)....11

*McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688 (S.D.N.Y. 1999)...............................5

*McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991) ..........................................................3

*Morgan v. United States*, 304 U.S. 1 (1938) .....................................................................................9

*Nec Corp. v. United States*, 151 F.3d 1361 (Fed. Cir. 1998) ..........................................................12

*Patchak v. Zinke*, 138 S. Ct. 897 (2018) ...........................................................................................4

*Ramos v. Nielsen,* No. 18-CV-1554 (EMC) (N.D. Cal.),....................................................................17

*SAS Inst., Inc. v. Iancu*, -- U.S. --, 138 S.Ct. 1348 (2018) ...................................................................2

*Sherrod v. Brietbart*, 304 F.R.D. 73  (D.D.C. 2014) .......................................................................17

*Simplex Time Recorder Co. v. Sec'y of Labo*r, 766 F.2d 575 (D.C. Cir. 1985) ............................7, 10

*Solomon v. Nassau Cty.,* 274 F.R.D. 455 (E.D.N.Y. 2011) (Spatt, J.)...............................................13

*State of New York et al. v. United States Dep't of Commerce,* 333 F. Supp. 3d 282 (S.D.N.Y. 2018)..................................................................................................................................*passim*

*Thomas v. Cate,* 715 F. Supp. 2d 1012 (E.D. Cal. 2010) ..................................................................9

*Tigue v. U.S. Dep't of Justice*, 312 F.3d 70 (2d Cir. 2002) .............................................................16

*United States v. Gonzales*, 520 U.S. 1 (1997) ...................................................................................2

*United States v. Morgan,* 313 U.S. 409 (1941).........................................................................*passim*

*United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309 (D.N.J. 2009) .....................................9

*United States v. Wal-Mart Stores,* 2002 WL 562301 (D. Md. Mar. 29, 2002) ..................................8

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) .....................................................................................................................7

*Wirtz v. Local 30, Int'l Union of Operating Engineers*, 34 F.R.D. 13 (S.D.N.Y. 1963) ..................11

## PRELIMINARY STATEMENT

Defendants, the United States of America; Donald J. Trump, in his official capacity as President of the United States; the U.S. Department of Homeland Security ("DHS"); Kirstjen M. Nielsen, in her official capacity as Secretary of Homeland Security; and Claire M. Grady, in her official capacity as Acting Deputy Secretary of Homeland Security[1] (collectively, "the Government"), move pursuant to Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure to quash the subpoena Plaintiffs served on former Acting Secretary of Homeland Security Elaine C. Duke. In the alternative, the Government moves for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure to preclude the deposition of former Acting Secretary Duke.

The subpoena purports to command former Acting Secretary Duke to appear at a deposition, produce government records, and provide testimony solely related to her activities while serving in her former official capacity as Acting Secretary of the Department of Homeland Security. *See* Subpoena Issued to Former Acting Secretary Elaine C. Duke, attached as Exhibit 1 to the Declaration of Joseph Marutollo ("Ex. 1" or "Duke subpoena").

The Court should quash the Duke subpoena because it would violate separation of powers principles, inappropriately entangle a former cabinet-level official in civil litigation, and subject her to an undue burden. High-ranking public officials, including the former Acting Secretary, can be deposed only upon a showing of "exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *See Lederman v. New York City Dep't of Parks and Rec.*, 731 F.3d 199, 203 (2d Cir. 2013).

---

[1] Under Fed. R. Civ. P. 25(d), Acting Deputy Secretary Grady is automatically substituted for former Deputy Secretary Elaine C. Duke.

Reaffirming the extraordinary nature of court orders allowing depositions of cabinet-level officials, the Supreme Court recently granted certiorari and stayed an order from the Southern District of New York compelling the deposition of the Secretary of Commerce. *See In Re Dep't of Commerce*, No. 18-557, 2018 WL 5458822 (Nov. 16, 2018). Plaintiffs call that action "strikingly similar" to the instant acton (Dkt. No. 74 at 3), and the Supreme Court stayed that deposition notwithstanding the district court's finding that "the intent and credibility of" the Secretary were "central" to respondents' claims, and the Secretary's "'unique first-hand knowledge'" cannot "'be obtained through other, less burdensome or intrusive means.'" *State of New York et al. v. United States Dep't of Commerce*, 333 F. Supp. 3d 282, 285-86 (S.D.N.Y. 2018) (Furman, J.). As set forth below, this case lacks any exceptional circumstances that justify compelling former Acting Secretary Duke's testimony.

## BACKGROUND

### A.   The Duke Determination.

"After reviewing country conditions and consulting with the appropriate U.S. Government agencies, [former Acting Secretary Duke] determined on November 20, 2017 that conditions in Haiti no longer support[ed] its designation for [Temporary Protected Status ("TPS")] and [] therefore terminat[ed] the TPS designation of Haiti." Termination of the Designation of Haiti for [TPS], 83 Fed. Reg. 2648-01, 2648, 2650 (Jan. 18, 2018) (finding that "the conditions for Haiti's designation for TPS—on the basis of 'extraordinary and temporary conditions' relating to the 2010 earthquake that prevented Haitian nationals from returning in safety—are no longer met"); *see also* Supplemental Administrative Record ("AR") 38-43 (ECF Nos. 45-47).[2]

_____

[2] On August 27, 2018, the Court denied Plaintiffs' motion for extra-record discovery with leave to renew following a determination on the Government's motion to dismiss. ECF No. 42. In that same order, the

In reaching her determination, Acting Secretary Duke relied on the "in-depth review of conditions in Haiti" conducted by USCIS, which showed that "Haiti has made significant progress in recovering from the 2010 earthquake, and no longer continues to meet the condition for designation."  AR 40; AR 51-68; 77-86.  The State Department, through then-Secretary Rex Tillerson, provided a similar assessment and recommendation.  AR 36-37, 45-49.

Ultimately, former Acting Secretary Duke terminated Haiti's TPS designation.  AR 43. Acting Secretary Duke acknowledged the 2010 earthquake and "subsequent effects" that "formed the basis for [Haiti's] designation," but concluded that Haiti had "made progress recovering."  83 Fed. Reg. at 2650.  This progress included the closure of 98% of the displaced person sites, the October 2017 withdrawal of the U.N. peacekeeping mission and replacement with a successor police-only force, the successful completion of a presidential election in February 2017, progress rebuilding key government infrastructure, a continuing recovery of Haiti's economy, and the lowest levels of cholera in Haiti since the outbreak began.  *Id*.; AR 40-42. Consistent with then-Secretary Tillerson's recommendation, former Acting Secretary Duke delayed the effective date of the Haiti termination until July 22, 2019, 18 months following the end of the current designation, to "provide time for an orderly transition."  83 Fed. Reg. at 2648; AR 36, 38, 42.

**B.**      **Plaintiffs' Subpoena for the Deposition of Former Acting Secretary Duke.**

On November 30, 2018, Plaintiffs informed the Government that they intended to subpoena former Acting Secretary Duke to appear for a deposition.  On December 7, 2018, the Government

---

Court directed the Government to supplement the certified administrative record to include "all documents and materials that the agency directly or indirectly considered," including all materials that are already being produced in discovery in *Ramos v. Nielsen*, No. 18-CV-1554 (N.D. Cal.).  Pursuant to an order by the district court in *Ramos* regarding the production of documents previously marked as subject to the deliberative process privilege, including documents previously withheld in the original certified administrative record (*Ramos*, ECF No. 63 (N.D. Cal. Aug. 10, 2018)), the Government filed its supplemental certified administrative record pertaining to the Duke Determination.  *See* ECF Nos. 45-47.

informed Plaintiffs that it objected to Plaintiffs' efforts to subpoena the former Secretary and, in the event Plaintiffs effectuated service of the subpoena on former Acting Secretary Duke, the Government would move to quash the subpoena.  On or about December 10, 2018, Plaintiffs served a subpoena on former Acting Secretary Duke for her deposition.  *See* Ex. 1.  In the addendum to the Duke subpoena, Plaintiffs set forth a list of topics they intend to explore at her deposition, as follows:

1.  [Acting Secretary Duke's] understanding of the process by which the Secretary of Homeland Security may designate a foreign state for Temporary Protected Status.
2.  The factors [she] took into consideration when making determinations regarding the renewal or termination of TPS during [her] tenure as Acting Secretary of Homeland Security.
3.  The factors taken into account when [she] determined that TPS for Haiti should be terminated.
4.  Communications with government agencies and government officials regarding the presence of Haitian nationals or Haiti's designation for TPS and the termination of Haiti's designation for TPS.

*See* Ex. 1.

The Government reiterated its objection to the Duke subpoena again via letter to Plaintiffs on December 11, 2018.  Plaintiffs have not explained why the extensive discovery the Government has made available to Plaintiffs pursuant to this Court's orders—including more than 30,000 pages of documents—does not answer their questions for former Acting Secretary Duke, nor do Plaintiffs explain why their propounded requests for admission and interrogatories do not obviate the need to depose former Acting Secretary Duke.  Further, the Government has made available to Plaintiffs six other Government witnesses—including former Acting Secretary Duke's subordinates—for deposition.

The Duke subpoena also includes a request for production of documents within former Acting Secretary Duke's possession, custody, and control related to any of her TPS determinations. *See* Ex. 1.  The Government further objects to the document requests directed to former Acting

4

Secretary Duke on the grounds that former Acting Secretary Duke, who no longer works for the Government, is unlikely to have any TPS-related documents in her possession, custody, or control. Rather, that information, and its attendant privileges, belongs to the Government, and the proper way for Plaintiffs to pursue that material is to propound requests on the Government.

## LEGAL STANDARD

To depose a high-ranking government official, a party must demonstrate *exceptional circumstances* justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means. *See Lederman*, 731 F.3d at 203.

Federal Rule of Civil Procedure 45(d)(3)(A) requires this Court to quash a subpoena that "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  In the alternative, Rule 26(c) of the Federal Rules of Civil Procedure provides the Court with broad discretion, for good cause shown, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  This discretion includes orders forbidding the requested discovery altogether. Fed. R. Civ. P. 26(c)(1)(A).  A court evaluating a Rule 45 subpoena must "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Hermitage Glob. Partners LP v. Prevezon Holdings Ltd.*, No. 13-CV-6326, 2015 WL 728463, at *3 (S.D.N.Y. Feb. 19, 2015) (Greisa, J.).

## ARGUMENT

As a preliminary matter, the Government reiterates that no discovery—including former Acting Secretary Duke's deposition—should be permitted in this action.  In agency review cases like this one, "[t]he APA specifically contemplates judicial review on the basis of the agency

record." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Although the Court permitted, over the Government's objection, extra-record discovery, former Acting Secretary Duke's deposition should nonetheless be quashed because Plaintiffs cannot meet their burden to show exceptional circumstances, even assuming some extra-record discovery were permissible.

## A.    Plaintiffs Cannot Establish the Exceptional Circumstances Necessary to Justify Former Acting Secretary Duke's Deposition.

Depositions of current and former high-ranking government officials are barred absent "exceptional circumstances," *Lederman*, 731 F.3d at 203, both because it is "not the function of [a] court to probe the mental processes" of agency decision-makers, *United States v. Morgan*, 313 U.S. 409, 422 (1941) (*Morgan II*), and because allowing such depositions would interfere with the functioning of the Executive Branch. *See Lederman*, 731 F.3d at 202-03 (affirming denial of the plaintiffs' request to depose the Mayor and a former Deputy Mayor).

Court orders allowing depositions of such high-ranking officials raise significant "separation of powers concerns." *In re United States*, 624 F.3d 1368, 1372 (11th Cir. 2010). The Supreme Court recently acknowledged the extraordinary nature of court orders allowing the depositions of officials in the President's cabinet by granting certiorari and staying an order from the Southern District of New York compelling the deposition of the Secretary of Commerce. *See In Re Department of Commerce*, 2018 WL 5458822. Here, Plaintiffs have failed to demonstrate any exceptional circumstances that would justify compelling former Acting Secretary Duke's testimony.

It is well established that current and former high-level government officials should not ordinarily be compelled to testify concerning their official actions. *See Morgan II*, 313 U.S. at

422; *Lederman*, 731 F.3d at 204; *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985). As the Supreme Court recognized in *Morgan II*, parties litigating against federal agencies are precluded from examining the processes by which high-ranking agency officials exercise discretion and make decisions. *See* 313 U.S. at 422. The Court emphasized that the administrative decisionmaking and judicial processes are "collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." *Id.* Insulating the deliberative process of high-level public officials from judicial scrutiny thus helps preserve constitutional separation of powers. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977) (noting that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government"). Conversely, compelling the testimony of high-ranking agency officials "would have serious repercussions for the relationship between two coequal branches of government." *In re United States (Jackson)*, 624 F.3d 1368, 1373-74 (11th Cir. 2010) (observing that "compelling the [Food and Drug Administration] Commissioner's testimony by telephone for 30 minutes disrespected the separation of powers"). In light of the strong policies against requiring such testimony, the deposition of high-ranking government officials is permitted only in "exceptional circumstances." *Lederman*, 731 F.3d at 203; *see also Arlington Heights*, 429 U.S. at 268 (administrative decisionmakers may be compelled to testify "concerning the purpose of official action" only in "extraordinary instances").[3]

---

[3] Indeed, it is common for appellate courts to issue writs of mandamus to prevent the compulsion of testimony by high-level government officials. *See In re McCarthy*, 636 Fed. Appx. 142 (4th Cir. 2015) (EPA Administrator McCarthy); *In re United States (Jackson)*, 624 F.3d 1368, 1372-73 (11th Cir. 2010) (EPA Administrator Jackson); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (Vice President); *In re*

Allowing depositions of high-ranking Government officials as a matter of course when their agencies are sued over one of their policies would create "a tremendous potential for abuse or harassment," *K.C.R. v. Cty. of Los Angeles,* No. CV 13-3806, 2014 WL 3434257, *3 (C.D. Cal. July 11, 2014) (quotation omitted), and "would ... likely discourage people" from accepting Government positions, *F.D.I.C. v. Galan-Alvarez*, No. 1:15-mc-00752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015). Such an outcome would threaten the functioning of the Executive Branch and fly in the face of the Second Circuit's warning that without strict limits on plaintiffs' ability to depose high-ranking, those officials will soon find themselves "spend[ing] 'an inordinate amount of time tending to pending litigation'" in the relevant case and others. *See Lederman*, 731 F.3d at 203 (quoting *Bogan v. City of Boston,* 489 F.3d 417, 423 (1st Cir. 2007)).

This general rule is "no less applicable to former officials than to current officials," so that "the integrity of the administrative process" continues to be "respected." *F.D.I.C.*, 2015 WL 5602342, at *4 (quashing subpoena seeking testimony from the former chairperson of the FDIC). Further, "[s]ubjecting former officials' decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a deterrent to qualified candidates for public service." *United States v. Wal-Mart Stores*, No. CIV.A. PJM-01-CV-152, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002); *Dobson v. Vail*, No. C10–5233/KLS, 2011 WL 4404146, at *1 (W.D. Wash. Sept. 21, 2011) ("Former high-ranking government administrators, whose past official conduct may potentially implicate them in a significant number of related legal actions, have a legitimate interest in avoiding unnecessary

---

*United States (Reno & Holder)*, 197 F.3d 310, 313-14 (8th Cir. 1999) (Attorney General and Deputy Attorney General); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (FDIC Board of Directors members); *In re United States (Kessler)*, 985 F.2d 510, 512-13 (11th Cir. 1993) (FDA Commissioner). Given the extraordinary nature of mandamus as a remedy, *see In re Cheney*, 544 F.3d at 312, these decisions emphasize the courts' strong predilection against compelling the testimony of senior government officials.

entanglements in civil litigation.") (quoting *Arnold Agency v. West Virginia Lottery Com'n*, 206 W.Va. 583, 599, 526 S.E.2d 814 (W. Va. 1999)).

"If the immunity *Morgan* [II] affords is to have any meaning, the protections must continue upon the official's departure from public service." *United States v. Wal-Mart Stores*, No. CIV.A. PJM-01-CV-152, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002)); *see also United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 318 (D.N.J. 2009) ("Having found that *Morgan* [*II*] applies to former high-ranking officials, there can be no doubt that *Morgan* applies to . . . the former Administrator of the EPA."); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049-50 (E.D. Cal. 2010) (General rule prohibiting depositions of high-ranking government officials applies to former high-ranking officials); *K.C.R. v. County of Los Angeles*, 2014 WL 3434257, at *3. "The integrity of administrative proceedings and the underlying decisionmaking process of agency officials are just as important where the official to be questioned no longer serves in the same position," and "indiscriminate depositions" of such officials "would ... likely discourage people" from accepting those positions, "irrespective of whether those deposed were current or former officials." *F.D.I.C.*, 2015 WL 5602342, at *4.

Moreover, the rare and narrow exception to the rule against subjecting high-ranking current and former officials like former Acting Secretary Duke to depositions in civil actions challenging agency conduct is when the party seeking the deposition can demonstrate the existence of *"exceptional circumstances."* *Lederman*, 731 F.3d at 203 ("party must demonstrate exceptional circumstances justifying the deposition"); *see also Simplex Time Recorder Co.*, 766 F.2d at 586 ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."); *In re Office of Inspector Gen., R.R. Retirement Bd.*, 933 F.2d 276, 278 (5th Cir. 1991) (advising that the district court "shall remain

mindful of the requirement that exceptional circumstances must exist *before* the involuntary depositions of high agency officials are permitted") (emphasis added); *In re United States (Reno & Holder)*, 197 F.3d 310, 313 (D.C. Cir. 1999).  This hurdle is exceptionally high when plaintiffs seek to compel testimony from a member of the President's Cabinet, one of the highest ranking government officials, which would "have serious repercussions for the relationship between two coequal branches of government."  *In re United States (Jackson)*, 624 F.3d 1368, 1372 (11th Cir. 2010).

To depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.  *See Lederman*, 731 F.3d at 203.  High-ranking government officials are generally shielded from depositions because they have "greater duties and time constraints than other witnesses." *Id.* (citation omitted).  If courts did not limit these depositions, such officials would spend "an inordinate amount of time tending to pending litigation." *Id.* (citation omitted).

Satisfying this heavy burden belongs to the requesting party.  *See In re United States (Reno & Holder)*, 197 F.3d at 314 (quashing subpoena issued to the Attorney General, finding that defendant failed to "show[ ] that there are no other sources for the information he seeks"); *see, e.g.*, *In re United States (Kessler)*, 985 F.2d at 512-13; *Bogan*, 489 F.3d at 423 (affirming the issuance of a protective order precluding the deposition of the Mayor of Boston where plaintiff failed to demonstrate that the sought-after information was unavailable from other sources); *Low v. Whitman*, 207 F.R.D. 9 (D.D.C. 2002) (issuing a protective order where the information sought from the EPA's Deputy Chief of Staff was readily available from other witnesses); *accord Marisol*

*A. v. Giuliani*, No. 95 CIV. 10533 (RJW), 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998); *Wirtz*

*v. Local 30, Int'l Union of Operating Engineers*, 34 F.R.D. 13, 14 (S.D.N.Y. 1963).[4]

Here, Plaintiffs have identified no "exceptional circumstances" that would warrant the

deposition of former Acting Secretary Duke, and, indeed, none exist.  Plaintiffs cannot establish

that former Acting Secretary Duke has unique personal information that is essential to their case

or that the information they seek cannot be obtained from a less burdensome source.  *See In re*

*United States (Reno & Holder)*, 197 F.3d at 314 (exceptional circumstances require showing "*both*

that the discovery sought [from the high-level government official] is relevant and necessary *and*

that it cannot otherwise be obtained) (emphasis added).

Plaintiffs have not explained why information about former Acting Secretary Duke's

decision to terminate Haiti's TPS designation cannot be obtained through the extensive evidence

already produced, and for good reason: Plaintiffs already have an extraordinary wealth of

information pertaining to the Haiti TPS decision generally, and former Acting Secretary Duke's

decision-making specifically.  In the administrative record, the Government voluntarily provided

deliberative material that is most central to understanding the underlying decision at issue in this

litigation.  Specifically, the Government has waived the deliberative process privilege for the

formal recommendation from USCIS, the formal recommendation from the Secretary of State and

the accompanying assessment, an email recommendation from the Southern Command within the

Department of Defense, and former Acting Secretary Duke's handwritten notes, thereby giving

Plaintiffs sufficient view of the deliberations leading to the decision at issue.

---

[4] Plaintiffs' burden should be particularly high where, as here, they seek to depose a Cabinet-level official about a policy decision challenged under the APA, as deposition testimony runs far afield from the robust administrative record that should be the basis for this Court's review.

These materials, along with the Federal Register notice that sets out Acting Secretary Duke's reasons for terminating Haiti's TPS designation, provide a more than sufficient means of evaluating "the factors [Secretary Duke] took into consideration when making" her Haiti TPS determination and "her understanding of the process" by which such decisions are made, *see* Ex. 1. And even if such materials were not sufficient through discovery, the Government produced to Plaintiffs more than 30,000 pages of extra-record documents, including documents such as the former Acting Secretary's email correspondence with the White House Chief of Staff, her notes from critical meetings, and her personal memoranda. This mountain of material provides Plaintiffs more than enough to litigate their claim, as even cases that have suggested that officials may be deposed to supplement an agency decision for which there is no administrative record have held that such an inquiry is only proper if it is the "only way there can be an effective judicial review . . ." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

Even if all of this were somehow not enough, Plaintiffs have failed to show why any lingering questions they may have could not be resolved through other discovery mechanisms such as interrogatories, or through a deposition by written questions (Fed. R. Civ. P. 31). *See Lederman*, 731 F.3d at 203 (depositions of high-ranking officials was not justified where plaintiffs failed to show "that the relevant information could not be obtained elsewhere"); *see, e.g., Nec Corp. v. United States*, 151 F.3d 1361, 1375 (Fed. Cir. 1998); *Solomon v. Nassau Cty.*, 274 F.R.D. 455, 461 (E.D.N.Y. 2011) (Spatt, J.) ("In weighing the undue burden against the necessity of the testimony, the Court may also consider under Rule 26(b)(2)(C)(i) if the discovery can be 'obtained from some other source that is more convenient' or 'less burdensome.'").

In seeking her testimony, Plaintiffs contend that former Acting Secretary Duke's testimony is "relevant" to Plaintiffs' claims. But mere "relevance" comes nowhere close to satisfying the

"exceptional circumstances" standard.  *See In re United States (Kessler)*, 985 F.2d at 512 (plaintiff must "show a special need or situation compelling such testimony").  Otherwise, compelled testimony of high-ranking government decisionmakers would be routine instead of exceptional given the breadth of the term "relevant."  *See, e.g.,* Fed. R. Civ. P. 26(b).  Indeed, courts of appeals commonly issue writs of mandamus to stop such depositions, demonstrating their extraordinary nature.  *See supra* note 3.

Nor will deposing former Acting Secretary Duke achieve any legitimate purpose. Plaintiffs' apparently wish to explore the factors former Acting Secretary Duke took into account in making various agency determinations (*see, e.g.*, Ex. 1, Duke Subpoena, topic nos. 2 and 3). But aside from calling for privileged material, *see infra* Part B, the administrative record and Federal Register notice already provide the relevant information.  *See Termination of the Designation of Haiti for [TPS]*, 83 Fed. Reg. 2648-01, 2648, 2650 (Jan. 18, 2018); *see also* AR 38-43.[5]  And if Plaintiffs seek to use the deposition as a fishing expedition in search of "bad faith," it would be equally improper, as this Court has never found that former Acting Secretary Duke acted in bad faith in terminating TPS for Haiti, and Plaintiffs have provided no basis to believe that the reasons given for terminating TPS did not represent former Acting Secretary Duke's views. Indeed, the record is devoid of even a hint of bad faith by DHS, let alone evidence from which a trier of fact could infer bad faith regarding the actions of former Acting Secretary Duke.

Further, this case is distinguishable from the *Commerce* case where the district court ordered the deposition of the Commerce Secretary, a decision that is currently pending appeal before the Supreme Court.  *See State of New York*, 333 F. Supp. 3d at 292; *In Re Department of*

---

[5] And even this Court concluded that the existing administrative record is insufficient to demonstrate that the agency adhered to the APA's standards, the proper course would be to remand or permit supplementation of the record.  *See* 5 U.S.C. § 706; *Camp*, 411 U.S. at 142.

*Commerce*, 2018 WL 5458822.  In denying a writ of mandamus to quash the order requiring the deposition of the Commerce Secretary, the Second Circuit held that the district court, in finding that the Commerce Secretary likely possesses unique firsthand knowledge central to the plaintiffs' claims, noted that deposition testimony by three of the Secretary's aides indicated that only the Secretary himself would be able to answer the plaintiffs' questions.  *See In re United States Dep't of Commerce*, No. 18-2856, 18-2857, 2018 WL 6006885, at *1 (2d Cir. Oct. 9, 2018).

In contrast, here, Plaintiffs have not established a record that former Acting Secretary Duke has any "unique firsthand knowledge" central to Plaintiffs' claims, nor can they demonstrate that they are unable to obtain necessary information through other, less burdensome or intrusive means, including from the other six witnesses who have, or will be deposed in this action.  Plaintiffs have not yet completed the depositions of former Acting Secretary Duke's subordinates.

Indeed, the district court in the *Commerce* case, in authorizing discovery, initially suggested that "plaintiffs should take other depositions before deciding whether they need or want to" seek Secretary Ross's deposition.  *See* Tr. at 87, July 3, 2018, No. 18-cv-2921, ECF No. 205 (Furman, J.).  Here, Plaintiffs have noticed six depositions of current and former USCIS and DHS officials.  To date, Plaintiffs have only completed one of those depositions.  Plaintiffs' request at this time to depose former Acting Secretary Duke is improper without having, at a minimum, completed those depositions.

At bottom, there is no good reason—let alone "exceptional circumstances"—to compel the former Acting Secretary Duke's deposition.  It would be unprecedented to compel a former DHS Secretary to sit for a deposition in litigation challenging the agency's action, and there is no basis to start here when the Duke Determination is set forth in detail, in the administrative record and the Federal Register notice.  *See* 83 Fed. Reg. 2648-01, 2648, 2650 (Jan. 18, 2018).  Plaintiffs'

demand for former Acting Secretary Duke's deposition is extraordinary, unnecessary, and unsupported.  It should be rejected.

**B.      Nearly All Testimony by Former Acting Secretary Duke Would Be Privileged.**

Courts also typically shield senior agency officials from depositions because their testimony would reveal details about internal decisionmaking processes, *see Morgan II*, 313 U.S. at 422, and Plaintiffs' requested deposition of former Acting Secretary Duke would be no different. Plaintiffs apparently seek testimony from her regarding her deliberations and basis for her TPS determination, *see, e.g.*, Duke subpoena, Ex. 1, topic no. 4 (requesting testimony regarding her oral "[c]ommunications with government agencies and government officials" regarding Haiti's TPS determination), but such testimony is likely shielded by the deliberative process privilege, rendering a deposition focused on this topic particularly improper and futile.  This privilege prevents the discovery of agency materials that are both pre-decisional and deliberative, so that agencies can "freely . . . explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Hongsermeier v. C.I.R.*, 621 F.3d 890, 904 (9th Cir. 2010).  The type of information that Plaintiffs are seeking—details about former Acting Secretary Duke's internal decisionmaking process—is not something to which Plaintiffs are *entitled* and, in any event, such details are pre-decisional and deliberative. *See Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002).  Thus, any testimony from Acting Secretary Duke that is not already covered by the information produced would be privileged.

**C.      In the Alternative, A Stay of Former Acting Secretary Duke's Deposition is Warranted Pending the Outcome of the Supreme Court's Decision in *In Re Department of Commerce*.**

In the event that the Court denies the Government's motion to quash, the Government respectfully requests that former Acting Secretary Duke's deposition be stayed until the Supreme

Court decides *In Re Department of Commerce*.  Although this Court has previously denied other requests for stays in this case, this particular request to stay Acting Secretary Duke's deposition is consistent with the Supreme Court staying the Secretary of Commerce's deposition in that case pending further review.  *See In re United States Dep't of Commerce*, 2018 WL 6006885, at *2. Like the plaintiffs in that matter, Plaintiffs here seek to depose a cabinet-level official based on claims that the challenged agency decision were driven by racial animus.  The Supreme Court's resolution of *In re Department of Commerce* will therefore be instructive on whether such a deposition is proper.[6]

Moreover, as the Government previously explained in its prior stay applicatio, the district court in *Ramos v. Nielsen*, No. 18-CV-1554 (EMC) (N.D. Cal.), issued a preliminary injunction ordering that defendants, including DHS, and "all persons acting in concert or participating with them" are "enjoined and restrained from engaging in, committing, or performing, directly or indirectly, by any means whatsoever, implementation and/or enforcement of the decisions to terminate TPS for [*inter alia*] Haiti pending resolution of this case on the merits."  *Ramos*, No. 18-CV-01554 (EMC).  Plaintiffs would have, at a minimum, nearly 6 months after any decision vacating the preliminary injunction is issued to protect their interests in this Court.[7]  Plaintiffs would therefore not be placed in a precarious position, since they would—in the event that the preliminary injunction is vacated—have sufficient time to address any issues with the respective federal district court.

---

[6] The Supreme Court ordered briefing in *In Re Department of Commerce* to be completed by February 4, 2019, with oral argument set for February 19, 2019.

[7] On November 29, 2018, the Government filed its opening brief in *Ramos* at the U.S. Court of Appeals for the Ninth Circuit on November 29, 2018.  The answering brief is due January 31, 2019.  The optional reply brief is due February 21, 2019.

## CONCLUSION

Accordingly, for the reasons set forth herein, this Court should quash the deposition subpoena served on former Acting Secretary Duke.  If this Court disagrees and allows former Acting Secretary Duke's deposition to proceed, it should be limited in time to 90 minutes, *see, e.g.*, *Sherrod v. Brietbart*, 304 F.R.D. 73, 77  (D.D.C. 2014) (two-hour limit);[8] *Fish v. Kobach*, 320 F.R.D. 566, 579 (D. Kan. 2017) (one-hour limit), and should be held only after all other discovery has concluded.  Moreover, in the event the Court orders the deposition of former Acting Secretary Duke, the Government respectfully requests that the Court stay its order to provide the Solicitor General time to consider whether to seek appellate relief in the Second Circuit or Supreme Court, if necessary.

Dated:  Brooklyn, New York
     December 17, 2018

                                          RICHARD P. DONOGHUE
                                          United States Attorney

           By:                 /s/
                                          Joseph A. Marutollo
                                          James R. Cho
                                          Assistant U.S. Attorneys
                                          718-254-6288/6519
                                          Joseph.marutollo@usdoj.gov
                                          James.cho@usdoj.gov

cc:    **BY E.C.F.**
          Counsel of Record

---

[8] Even with this temporal limit, the D.C. Circuit subsequently granted the government's petition for a writ of mandamus and ordered the subpoenas quashed.  *See* Order, *In re United States (Vilsack)*, No. 14-5146 (D.C. Cir. July 24, 2014).