UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK SAGET, SABINA BADIO FLORIAL, NAÏSCHA VILME, GERALD MICHAUD, BEATRICE BELIARD, RACHELLE GUIRAND, JEAN CLAUDE MOMPOINT, YOLNICK JEUNE, GUERLINE FRANCOIS, LEOMA PIERRE, HAÏTI LIBERTÉ, and FAMILY ACTION NETWORK MOVEMENT, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> DONALD TRUMP, President of the United States of America, UNITED STATES OF AMERICA, DEPARTMENT OF HOMELAND SECURITY, KIRSTJEN NIELSEN, Secretary of Homeland Security, and ELAINE C. DUKE, Deputy Secretary of Homeland Security, <br><br> Defendants. | Case No. 1:18-cv-01599 |

**PLAINTIFFS' MOTION TO COMPEL TESTIMONY AND FOR *IN CAMERA* REVIEW OF THE DOCUMENTS ON THE GOVERNMENT'S PRIVILEGE LOG**

December 17, 2018

The Government has made sweeping and overbroad assertions of the deliberative process privilege with respect to both testimony and documents, blocking key discovery. Plaintiffs respectfully ask the Court to rule that the Government's privilege assertions with respect to testimony are invalid and to conduct an *in camera* review of the allegedly privileged documents.

On Thursday, December 13, Plaintiffs took their first deposition in this case. The witness, Kathryn Anderson, is an employee of the U.S. Citizenship and Immigration Services ("USCIS"), the agency within the Department of Homeland Security ("DHS") that was responsible for advising the DHS Secretary about the facts relevant to the Secretary's review of TPS for Haiti. During the deposition of Ms. Anderson, the Government asserted the deliberative process privilege in response to virtually every factual question concerning the review of Haiti's TPS designation that went beyond the face of the documents Ms. Anderson was shown. The Government refused to allow Ms. Anderson to answer factual questions about what she reviewed, what information she had or sought, or what she was instructed to do. Plaintiffs expect that the Government will employ the same obstructionist approach in the remaining depositions scheduled in the coming days. Therefore, prompt resolution of this issue is crucial to Plaintiffs' ability to prepare this case for trial in early January.

The very heart of Plaintiffs' claim – that the Government acted on pretext, in violation of the TPS statute and the Constitution, when it terminated TPS for Haiti – concerns what Government officials did, what instructions they gave or received, what information they sought and considered, and how the decision was made. The deliberative process privilege does not protect this fact-based testimony.

The Government has also maintained its broad assertion of the deliberative process privilege over documents in this case. Although it has finally produced a bare-bones privilege log,

the Government has steadfastly refused to provide any description of the documents over which it asserts the privilege.

For the reasons discussed below, Plaintiffs respectfully request that the Court overrule the Government's privilege assertion over testimony and compel the testimony of all Government witnesses related to how the decision to terminate TPS for Haiti was made, including what evidence and information was considered or reviewed, what investigations and analyses were undertaken, and what DHS and its employees were told to do when making this decision. Plaintiffs also request that the Court conduct *in camera* review of the documents on the Government's privilege log.

**Background**

Following Plaintiffs' requests for the production of documents, along with other discovery requests, on November 30, 2018, the Government filed a motion for a protective order asking the Court to permit it to make a blanket invocation of the deliberative process privilege over documents it refused to even identify or describe. Doc 82. Plaintiffs responded that the deliberative process privilege is a qualified privilege that only applies when the Government's interest in secrecy outweighs Plaintiffs' interest in disclosure and the public's interest in knowing the decision-making processes of its government. Doc 86. Perhaps recognizing that such a broad assertion of a qualified privilege could never stand, the Government withdrew its motion for a protective order. Doc. 90.

In the first deposition in this case, however, the Government resurrected its nearly universal deliberative process privilege assertion over the witness's potential testimony. For example, after learning that the Government initiated an inquiry into crime statistics concerning Haitian TPS beneficiaries, Plaintiffs asked Ms. Anderson whether she previously had ever been directed to

3

conduct such an inquiry as part of the process of TPS designation. Ex. A at 305:8-21. The Government asserted the deliberative process privilege and refused to allow Ms. Anderson to answer the question. Similarly, after showing Ms. Anderson a document directing her to "squeeze out more data" even after she had provided her best answers in a memo, Plaintiffs asked what she did to comply with the instruction, but the Government again asserted the deliberative process privilege and refused to allow her to answer. Ex. A at 188:12 – 191:22. The Government even invoked the deliberative process privilege and refused to allow the witness to say whether a decision was made in May 2017 to terminate TPS for Haiti. Ex. A at 226:19 – 229:11. These are only a few examples of what occurred repeatedly throughout the deposition: for all practical purposes, the Government categorically asserted the deliberative process privilege and refused to allow Ms. Anderson to answer questions about what she reviewed, who gave her direction, and what they told her to do.

Because the Government made such a broad assertion of the privilege at Ms. Anderson's deposition, Plaintiffs determined that it would be most efficient for the parties and the Court to resolve this issue by motion rather than through a series of interruptions during the deposition.

Separately, the parties continued negotiations over the Government's assertion of privilege over documents. At the outset, on December 5, 2018, the Government took the position that it would not proceed along the "typical path" of providing a privilege log—as required by Federal Rule of Civil Procedure 26 and Eastern District of New York Local Rule 26.2(a)—because "it would be impossible for the Government to adequately retrieve all the documents and information sought by Plaintiffs, review for privilege, [and] create a privilege log." Ex. B at 2-3 (Email of December 5, 2018, 8:35 AM). Apparently not.  On December 11, 2018, after it withdrew its motion

4

to seeking blanket permission to assert the privilege, the Government produced a privilege log. Ex. C.

The Government's 488-page privilege log enumerates 4,071 documents—the overwhelming majority of which have been withheld on the basis of the deliberative process privilege. The privilege log identifies document custodians and the privilege asserted (i.e. Attorney Client or Deliberative Process), and in some instances provides additional information derived from the "metadata" associated with the document, but fails to provide a description of the documents. Plaintiffs' counsel alerted the Government to the fact that the privilege log "does not provide a description of the documents sufficient [to] evaluate the privilege[s]" asserted. Ex. D at 6-7 (Email of December 14, 2018, 1:27 PM). In some instances, there is virtually no information about the documents—as in several documents from former Acting Secretary Duke, in which the log provides no information aside from a filename, a date, and an assertion that the documents are protected by the deliberative process privilege. *See* Ex. C at 488.

Plaintiffs' counsel proposed a solution that would "alleviate the burden on the government entirely": asking this Court, or a magistrate or special master it appoints, to conduct an *in camera* review of the documents on the Government's privilege log. Ex. D at 6-7 (Email of December 14, 2018, 1:27 PM). Plaintiffs' counsel asked the Government if it would sign a joint letter to this Court "requesting its participation." *Id*.

The Government declined this suggestion, instead inviting Plaintiffs to "identify documents listed on the current . . . privilege log that Plaintiffs want the Government to prioritize." *Id*. In response, Plaintiffs' counsel explained that it would be difficult for Plaintiffs to identify documents to prioritize given the lack of descriptions in the privilege log and again invited the Government to join Plaintiffs in at least asking the Court to conduct an *in camera* review. Ex. D

5

at 4-5 (Email of December 14, 2018, 5:33 PM). The Government again declined to join the Plaintiffs in requesting that this Court conduct an *in camera* review. This time, the Government added that it was reviewing the documents itself and that it "may re-consider whether the privilege needs to be fully asserted on specific documents." *Id*. at 2-3 (Email of December 16, 2018, 11:03 PM).

The parties are at an impasse with regard to the Government's assertion of privilege as to oral testimony and as to the documents on the Government's privilege log. Plaintiffs therefore bring this motion.

## Argument

Plaintiffs have alleged that the Government's decision to terminate TPS for Haiti was a pretext. That is, Plaintiffs have alleged that Trump Administration officials made the decision to terminate TPS without following the procedure required by the TPS statute and in violation of the Constitution, and that Government officials then reverse-engineered documents and other evidence to paper over the decision that had already been made. In its decision denying the Government's motion to dismiss, this Court found that "Plaintiffs have plausibly alleged that to the extent Defendants engaged in any process of review, it was to identify facts to support a pre-determined decision to terminate TPS for Haiti." Doc. 96 at 15.

In order to prove those allegations, Plaintiffs must be allowed to ask witnesses about their personal knowledge of what information was reviewed, what instructions were given, what decisions were made, when, and by whom. These questions go to the heart of the analysis of whether the decision to terminate TPS was in violation of the TPS statute and the Constitution. Testimony regarding these issues – what an individual reviewed, what she was instructed to do, what facts she asked for and why, who asked her to take particular actions, and why she did what

she did – is not protected by the deliberative process privilege. The Government's privilege assertions over testimony must be overruled.

Plaintiffs also seek expedited resolution of the Government's sweeping privilege assertions with respect to documents. Given the short time remaining before trial, the volume of documents the Government has withheld, its unwillingness to describe the documents on its privilege log, and the Government's apparent use of the deliberative process privilege as both a sword and a shield in this litigation, the Plaintiffs respectfully request that this Court conduct an *in camera* review of the documents on the Government's privilege log.

## I. The Deliberative Process Privilege Does Not Protect This Testimony of Government Witnesses.

The deliberative process privilege is a qualified privilege that exists to promote the free exchange of ideas among government officials. *In re Franklin Nat. Bank Securities Litig.*, 478 F. Supp. 577, 581-82 (E.D.N.Y. 1979) (Weinstein, J.). The privilege protects "expressions of opinion or recommendations in intragovernmental documents" but "does not protect purely factual material." *Id.* at 581 (emphasis added).

The deliberative process privilege is something of a paradox because, as Justice Brennan observed, "to enable the government more effectively to implement the will of the people, the people are kept in ignorance of the workings of their government." *Herbert v. Lando*, 441 U.S. 153, 195 (1979) (Brennan, J., dissenting). For this reason, the deliberative process privilege is not absolute. The Government's interest in the free exchange of frank talk must be weighed against the importance of the testimony and the public's interest in knowing the decision-making process of its government. "[W]hen the public's interest in effective government would be furthered by disclosure, the justification for the privilege is attenuated. Thus, for example, where the documents

sought may shed light on alleged government malfeasance, the privilege is denied." *In re Franklin Nat. Bank Securities Litig.*, 478 F. Supp. at 582.

In balancing the public's interest in effective government and uncovering potential government malfeasance against the Government's interest in being able to speak freely, courts consider: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence, (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id*. at 583 (citations omitted). As we show below, these factors weigh strongly against application of the deliberative process privilege here.

*First*, the testimony the Government seeks to block is highly relevant. The Government seeks to limit the inquiry to the administrative record, where the Government set forth its pretextual reasons for the termination of TPS for Haiti. Plaintiffs, on the other hand, seek to investigate how the decision was actually made, in order to show the TPS statute and the Constitution were violated. This inquiry is the heart of this case. As the Court stated in its decision denying the Government's motion to dismiss, under *Arlington Heights*, 429 U.S. 252 (1976), the Court "may look beyond the stated reasons for the government action to determine whether invidious discriminatory purpose was a motivating factor," an analysis that "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available," including "the historical background of the decision, ***particularly it if reveals a series of official actions taken for invidious purposes***; the specific sequence of events leading up to the challenged decision; any departures from the normal procedural sequence; any substantive departures ***particularly if the***

8

*factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached*." Doc. 96 at 20-21 (internal quotations omitted) (emphasis added).

All of these factors are highly relevant here. Evidence related to the historical background of the Government's decision to terminate TPS is relevant particularly because Plaintiffs have alleged that the background will reveal a series of official actions taken for invidious purposes. Plaintiffs also attempted to ask questions about the "specific sequence of events leading up to" the termination of TPS and "departures from the normal procedure sequence" for terminating TPS, in particular to prove that the "factors usually considered important" in terminating TPS "strongly favor a decision contrary to the one reached" about Haiti. Testimony to these facts is highly relevant to this litigation, and this factor weighs strongly in Plaintiffs' favor.

*Second*, by the very nature of the decision-making process, there is very limited availability of other evidence. Indeed, to the extent that the documents in this case paint an incomplete picture of the TPS decision-making process, *a decision maker's oral testimony is the only way* Plaintiffs can obtain evidence central to their claims. Plaintiffs have received only a small number of documents from the Government. These documents form the basis of Plaintiffs' deposition questions, which attempt to flesh out the factual details of the decisions that were made by the people who made them. Some of these facts are reflected in the documents. The only other source of all the remaining details is the witnesses themselves. Therefore, this factor weighs strongly against application of the deliberative process privilege.

*Third*, this litigation involves serious issues. As this Court has correctly pointed out, this is "an important litigation about the actions of the government," and for that reason "there is a lot at stake." (11/13/2018 Hrg. Tr. at 83:17-18; 82:13). "Because every federal case is serious, the outcome of this factor hinges on the interest of the public." *Winfield v. City of New York*, 2018 WL

9

716013, at *11 (Feb. 1, 2018). At stake in this litigation is whether the Government made a pretextual decision to terminate TPS for Haiti. A government that makes decisions on pretext, in violation of federal statute and the Constitution, is not acting in the public interest. Moreover, more than 60,000 lawful residents of the United States—including over 20,000 with children born in the United States—face summary deportation. These are issues of supreme importance to the public in a constitutional democracy, and this factor weighs heavily in Plaintiffs' favor.

*Fourth*, Plaintiffs' complaint alleges that the Government's termination of TPS for Haiti violated the TPS statute and the Constitution. And only Government witnesses are in possession of the factual evidence related to this process. Where, as here, the Government's "decisionmaking clearly is the central issue challenged by Plaintiffs," this factor "favors disclosure." *Winfield*, 2018 WL 716013, at *12. Other courts to consider the issue have agreed that the "deliberative process privilege is not appropriately asserted…when a plaintiff's cause of action turns on the government's intent." *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.D.C. 1998). Because of the very nature of the claim, "if either the Constitution or a statute makes the nature of governmental officials' deliberations the issue, the privilege is a nonsequitur." *Id*. Therefore, "it seems rather obvious to us that the privilege has no place in a…constitutional claim for discrimination." *Id*.; *Scott v. Bd. of Educ. of City of E. Orange*, 219 F.R.D. 333, 337 (D.N.J.) (permitting a plaintiff to question members of the public Board of Education "regarding their pre-decisional deliberations" because "Plaintiff is attacking the integrity of the Board's decision…and is seeking to disclose the Board's misconduct").

*Finally*, although disclosure of the Government's decision-making process theoretically might make government employees less frank in the future, this does not support application of the deliberative process privilege here. In the first place, the deliberative process privilege does

not protect purely factual material. *In re Franklin Nat. Bank Securities Litigation*, 478 F. Supp. at 581. Here, Plaintiffs seek discovery of facts: how the decision to terminate Haiti's TPS status was made. Moreover, in cases where the discovery "may shed light on alleged government malfeasance, the privilege is denied." *Id.* at 582; *United States v. AT&T Co.*, 524 F. Supp. 1381, 1389-90 (D.D.C. 1981) (permitting defendants to elicit testimony "where there are allegations of misconduct or misbehavior" because "evidence to that effect is not privileged"). This principle is particularly applicable here, where Plaintiffs have plausibly alleged that the entire "decision-making process" was a sham, created after the fact to give cover to an unlawful decision that had already been made. Thus, in these circumstances, the Government's interest in secrecy is far outweighed by the Plaintiffs' and the public's interest in ensuring that the Government followed the law. For these reasons, the Court should overrule the Government's assertion of the deliberative process privilege and compel testimony on these issues.

## II.   The Government Waived the Deliberative Process Privilege for Witness Testimony.

Even if the Government's assertion of the deliberative process privilege was otherwise appropriate for this testimony, the Government cannot assert the privilege because it has been waived. The Government explicitly stated in a letter to Plaintiffs that it would not assert the deliberative process privilege over documents that it was producing. Ex. E at 2 ("the Government will not assert the deliberative process privilege to prevent Plaintiffs from relying, in this action, on the DPP documents previously produced in *Ramos*"). And, in its motion to quash the subpoena of former DHS Secretary Elaine Duke, the Government agrees that it has "waived the deliberative process privilege" for a small subset of documents. Doc. 97 at 11. This affirmative waiver necessarily extends to testimony about those documents. The Government is not permitted to use waiver as a sword, waiving privilege over only those documents that help its case and withholding

11

the rest. For this reason, when a privilege is waived, "[t]he widely applied standard for determining the scope of a waiver" holds that the waiver extends to "all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (D.C. Cir. 2005). "The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Id*. The Government has waived the deliberative process privilege with regard to this testimony.

### III. Plaintiffs Respectfully Request *In Camera* Review of Purportedly Privileged Documents.

*In camera* review is typical in cases where the Government withholds documents based on the deliberative process privilege. Indeed, "[g]iven [the] clash of strong competing interests" at play in such cases, "examination of the documents in camera" is "usually require[d]." *In re Franklin Nat. Bank Securities Litig.*, 478 F. Supp. at 582; *Caputi v. Topper Realty Corp.*, 2015 WL 2453520 at \*6 ("Where questions of a privilege's applicability arise, in camera review is 'a practice both long-standing and routine' for resolving them." (citation omitted)). Consistent with this approach, the court in a parallel TPS case, *Ramos*, evaluated the Government's privilege claims via *in camera* review. *Ramos v. Nielsen*, No. 18-cv-1554, Dkt. 53 (N.D. Cal. Aug. 2, 2018).

*In camera* review by this Court—or by a magistrate or special master that the Court may appoint—would be especially appropriate in this case. First, it would alleviate the supposed burden on the Government to individually describe individually the documents that it has withheld – a burden that the Government has indicated would be substantial. In fact, *in camera* review would reduce the burden on both parties and ultimately the Court, as it would eliminate the need for extensive document-by-document motion practice so close to trial.

Second, *in camera* review would prevent the Government from selectively invoking the privilege. It is well established that a privilege "cannot at once be used as a shield and a sword. A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (citation omitted); *see also Pacific Gas and Elec. Vo. v. Lynch,* 2002 WL 32812098 (N.D. Cal. Aug. 19, 2002) (deliberative process privilege cannot be used as both sword and shield). The Government has stated that it "may re-consider whether the privilege needs to be fully asserted on specific documents" Ex. D at 2 (Email of December 16, 2018, 11:03 PM), but has not disclosed what criteria it will use in making that determination. This creates the risk that the Government will produce documents that it views as helpful to its case while continuing to withhold documents helpful to Plaintiffs.  Moreover, given that the Government has asserted the privilege in an impermissibly broad manner over Kathryn Anderson's deposition testimony, there is reason to believe that that it may also have taken the same impermissibly broad approach in withholding documents as privileged.

For these reasons, Plaintiffs respectfully request that this Court—or a magistrate or special master it appoints—conduct an *in camera* review of the documents identified in the Government's privilege log to determine whether the privileges asserted over those documents are warranted. Plaintiffs further request that the Court order the Government to produce to Plaintiffs in a timely manner any document found to be non-privileged.

## IV.     Facilitating Resolution of this Dispute.

At the parties' request, the Court agreed to be available during depositions to resolve deliberative process privilege disputes. Given the Government's sweeping assertions of the deliberative process privilege in the first deposition, it appears that ruling on individual instructions

13

not to answer at the depositions may be very time-consuming. In order to make the most efficient use of the Court's time, Plaintiffs' counsel will make themselves available to the Court for oral argument on this motion and on the deliberative process privilege at any time that is convenient for the Court.

## Conclusion

For the reasons discussed above, the Government's broad assertion of the deliberative process privilege to prevent an inquiry into how the decision terminating TPS for Haiti was actually made should be overruled, and Government witnesses should be compelled to provide this testimony on that subject, including testimony about what information DHS personnel reviewed, what factors they considered, what they were instructed to do and by whom, and why they did what they did in connection with the termination of TPS. The Court should also order an *in camera* review of the documents that the Government has withheld as privileged.

Dated: December 17, 2018

Respectfully Submitted,

/s/ Sara Norval

Ira J. Kurzban, (NY Bar No. 5347083)
Kevin Gregg*
KURZBAN, KURZBAN,
TETZELI & PRATT, P.A.
2650 S.W. 27th Avenue, 2nd Floor
Miami, FL 33133
Phone: (312) 660-1364
ira@kkwtlaw.com

Sejal Zota*
NATIONAL IMMIGRATION PROJECT OF THE
NATIONAL LAWYERS GUILD
89 South Street, Suite 603
Boston, MA 02111
Phone: (919) 698-5015
sejal@nipnlg.org

*Admitted *Pro Hac Vice*

Christopher J. Houpt (NY Bar No. 4452462)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Phone: (212) 506-2500
choupt@mayerbrown.com

Geoffrey M. Pipoly*
Christopher J. Ferro*
Sara Norval*
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
gpipoly@mayerbrown.com

*Attorneys for Plaintiffs*